Good morning, Your Honors. I'd like to reserve a couple minutes for rebuttal, if I may. Manage your own time. Thank you. This case is essentially about due process to protect an individual's rights. And I think that the simplest way to look at this case is try to review Rule 11 as a whole, because when we have a rejection of the provision of the plea that we have here by the Court, and clearly the guidelines were miscalculated by the government, they've admitted that, that's the nature of and the status of the case. But I think the way to look at this, it's a modification of the plea agreement that's taken place here at this rejection. The judge needs to go through the plea colloquy to the limited portion which applies to the range of sentencing that's now being modified and changed because of the error that was made in the original plea agreement. Counsel, what indication do we have in the record that a more complete colloquy would have resulted in something other than the plea of guilty? You know, there isn't anything in the record, and that's because this colloquy didn't come up. The limited amount of exchange that was taking place, the only thing you have in the record is that when Judge Burry, and this is on page 48 in the excerpt of records, when Judge Burry says, well, I am going to reject this plea agreement and that would give him the option to withdraw his plea if he wants to go to trial, the counsel for the defendant asks to have a minute, take a look at what's going on, and then says that her client wishes to go forward. Well, counsel, I guess if it's, if the same result would have happened, if there's, well, let me just see if I can state this differently. How do we know that there's prejudice, or why isn't any error in the plea colloquy harmless if he would have done the same thing anyway? Well, there's no way to know that, and there's no way for me to come here and argue it because there's no record that tells us what would have happened. Well, what exactly was the judge required to do that he didn't do? Let's try it that way. Sure. Basically, under the advisement that he's supposed to give in Rule 11c, subsection 5, subsections a, b, and c, he clearly informed the parties he was going to reject. That satisfies me. That's clear. That's clear. He advised the defendant that the court is not required to follow the plea agreement. That's clear. Well, that didn't happen at this stage, but it clearly happened before, at the change of plea. And I don't think that's an arguable point. Okay. And he gave the defendant an opportunity to withdraw his plea, which certainly appeared. He did. So the only thing that we're missing here is part c, and that the, and it's an advisory thing. And it's not a discretionary advice. It's an advisory that he should be aware that he can be worse off if he could, that he could get a higher sentence. Well, it says that the court may dispose of the case less favorably towards the defendant. Right. Now, the only thing that happened in this record prior to this was a short discussion just before this where the prosecutor tells the court that the victim of the case is happy with the 24 to 30 months. The probation officer tells the court that the, she had heard 30 to 33 months that the victim was happy with. But we're now going to, what is it, 46 to 57 months? Well, you just said, and I think this is accurate, earlier in your argument, that the government had miscalculated the applicable offense level. That's correct. And he knew that. By six levels. And when you say he knew that, who are you referring to? The defendant. Well, the only thing we have in the record regarding that is that the pre-sentence report was reviewed with him. Right. There's no actual affirmative statement that he knew that. Well, there's no, isn't that the obvious reason for rejecting the plea? Well, the part I thought was a little bit confusing was that the judge basically said, look, this is a range of 24 to 30 months, that's a level 17. According to the pre-sentence report, it ought to be a level 23. And then there's no further discussion about that. The next time we crunch numbers is the little colloquy I just talked about, the 24 to 30 or the 30 to 33 months, and then at the very end of the sentence he says, I'm going to give you 57 months. There's no colloquy in there. And the part that the judge told the defendant how much he's going to give him. Absolutely not. I agree. He just has to understand that he could get more than the plea agreement. That's correct. And when we do the plea agreement, we're very careful to say, look, this is the range that's being proposed, that's set out, that's all in the colloquy for the plea. So what I'm suggesting, what I'm telling the Court, I think that what needs to happen at this point is just the judge to simply say to the defendant, you know, I'm going to reject this. You can go to trial if you want to. And if you maintain your plea agreement, then you can expect that your sentence is going to be worse than what that plea agreement says. I don't think he has to specifically say the actual range. However, I would argue that he should because that's what's handled in the colloquy down below where the magistrate does it. There's a purpose for that. It would have been better. You know, the purpose is so that the defendant knows what he's getting into. And honestly, the only reason we're here is because this is mandatory. This isn't something discretionary that the Court can say, I don't need to tell him that. You know, which element can he ignore at that point in time? He can ignore any of the elements. But there's a reason for this, and the only logical reason is if we look at Rule 17 as a whole. And say there's a purpose for all these colloquies that we go through to protect the individual's rights so that we can comfortably know that the defendant understood what the modification was going to be and that he voluntarily decided to proceed, and that's where the record is absent. Right. So I take the technical objections. I understand that. But here you have a lot of colloquy where the court is saying, well, it looks to me like you made a mistake. And the prosecutor says, I made a mistake in calculating the guidelines. And the prosecutor says, he's going to spend the rest of his life in prison regardless of what happens. And then the court says, well, I'm going to eject the plea agreement. And that will give him the option of withdrawal. And then, of course, we have the colloquy that says, may I have a minute? My client wishes to go forward. Now, given all that, I mean, it seems to me that at least counsel should have known what was going on. I agree. You know, that's one of the things that I look at this. I'm going, I know all the attorneys know what's going on. They understand. Right. The problem is, is that it's not the attorney's understanding that it's essential here, and what's essential is that the defendant understands what's going on. Because when I looked at all the facts that they mixed around in here, it's really not very clear what the actual facts were. On one hand, they say the defendant made a statement admitting he did this. And on the other hand, the defense is presenting the fact that this guy was so intoxicated, he can't remember anything. Yeah. You're doing the best you can. Okay. You've got about a minute and a half, so. Thanks. I'm good. Good morning. May I please court Bruce Ferg on behalf of the government in this case. The bottom line here is that we're dealing with a plain error case, which places a burden on a defendant to, as Judge Graber indicated, show that there would have been some different outcome if a more complete explanation of the things in Rule C-5 had been given. The defendants already acknowledged that basically A and B were fulfilled, so the only question at all is whether the defendant sufficiently understood that upon the original plea agreement being rejected, the district court had the option of sentencing him more severely if he went ahead and pled guilty. What in the record is your best section to demonstrate that the defendant did actually understand that things could go worse for him than the agreement? Well, basically we're dealing with a circumstantial evidence case, but I think there is significant circumstantial evidence that that's what he had to have understood, particularly given that the pre-sentence report, which was done and which counsel acknowledged she had discussed with him, made the point, wait a minute, the actual appropriate sentencing range is far beyond what the plea agreement was and, in fact, recommended 46 months when that was well beyond what the original agreement had been. And so it's clear, even before the sentencing hearing, that the plea agreement was not likely to be the top range. Well, counsel knew that, but we don't have any indication the defendant understood it, do we, except that these things are set in court? That's true. So just rise or fall on that. But even Rule 11c doesn't say that there has to be a change of plea-type colloquy where the court elicits from the defendant some kind of response. It simply says advise. And, again, we're dealing with plain error, plus the Rule 11h makes clear that unless it is harmless, if it's basically a matter of form. Well, one thing that's kind of concerned me about this case is that the government agrees that it makes a stipulation, signs the plea agreement, then goes to sentencing and basically says we screwed up. We don't want to, I mean, all but says we don't want to be bound by the plea agreement. Generally, that's considered a breach, wouldn't you say? Well, the remedy for a breach is exactly what the defendant was given, the opportunity to withdraw from that plea and go to trial. Isn't a potential remedy requiring the government to live by its agreement, at least recommend to the court that it do what it agreed to? I don't know that this Court's case law has gone that far. I'd be willing to be instructed, but I don't know that it's required. And bottom line is we're dealing with a specific rule that says this is the way you do it, and if you don't do it this way, then it's harmless error. For example, even the personally discussed language is the same as came up in Roblero Solis, and they said harmless error applies. So if you can't show the defendant that you would have done something differently, then it's harmless error and it's affirmed. Well, I understand the argument. It's a little bit concerning to me that the government here, I mean, the defendant goes into sentencing believing the government will agree to the plea agreement, stick by that. And the government here basically said I miscalculated the guidelines, he's going to spend the rest of his life in jail. I don't see any support that the government gave the plea agreement. I mean, the government could have said I made an error, but we stick by our agreement. But the government all but begged the court to reject the plea agreement that it had entered into, which, I mean, weaving it into the broader theme, then the defendant who believes that the government's going to support this stipulated agreement is left out in the cold. Well, respectfully, I think that's an assumption that isn't borne out by the record. Well, where did the government support the plea agreement in this colloquy anywhere? I don't think that it's required to support the plea when it acknowledges that it simply screwed up, that it made a mistake, which was caught by the pre-sentence report writer. Well, if that's the test, then the government's free to just make an argument against the plea agreement any time it goes into court, it seems like. It seems to me that there's a breach here, although I will grant you that the plea agreement itself does not require the prosecution to support it, as some plea agreements do, it just says we stipulate to this sentence. And that's where the Court's case law indicates that there is a breach. Well, as I understood, both sides thought that this was originally, that this was correct. Yes, ma'am. But when the government says, and I'm quoting, I request as much punishment as possible for him, that is inconsistent with the government's stipulation of a particular plea, a particular sentence. That's completely inconsistent. Respectfully, I don't think it is, because what is possible, it's what's legally appropriate, and that's to be determined, you know, if he wants to go into trial, if he wants to stick with his plea agreement. The counsel at that level did not say, give him 60 months or give him 63 months or anything else. He simply said, you know, Judge, I screwed up. You know, I forgot to add in that particular adjustment, and so here we are. And so, you know, do what you as a judge can do. But basically, because this person is dangerous, which the judge had already himself said and indicated that he was not content with the range in the plea agreement, clearly the whole process of this sentencing hearing was such that the defendant reasonably should have known, and again, what was his remedy? He asked this court, give me a chance to go back and have a chance to go to trial. Well, that's exactly what he was given. He's already been given the remedy. And all that would be fine, except that we don't hear from the defendant. We hear from his counsel. I mean, if two questions would have been asked of him and he had to respond, then there's no appeal here. I mean, that's the, and I realize it's a plain error case and put it all in context, but the defendant going in with a piece of paper saying he's, the government stipulated to X months, the government says he's dangerous, we made a mistake in the plea agreement, give him as much punishment as possible. It's sort of inconsistent with the negotiations. Once again, looking at the record as a whole, he also, before he went into that sentencing, had the PSR, which defense counsel discussed with him, saying, wait a minute, the plea agreement basically doesn't comply with the guidelines. And there was no objection to those calculations. Moreover, when the defense counsel was arguing to the district court before it decided to actually to reject the plea, she spoke in terms of please don't give him a term of 5 years. So certainly she had understood that that was a potential if the plea agreement was rejected. Then they have, before he makes his decision, a conference, and the record doesn't explain exactly how long it was, in which they were able to debate their options, which is exactly the remedy which he is now asking for on appeal, even though he didn't then. And finally, he did have an opportunity. Once the judge says not only I think you're dangerous and therefore you likely need more time than is in the plea agreement, but comes back and actually imposes a sentence, the defendant or the defense counsel could have said, wait a minute, I had no idea that this was the potential range that you were contemplating, and therefore I'd really like to change my mind. I didn't make this agreement to go ahead knowingly and intelligently, but there's no objection. And that's what the burden is on the defendant at this stage to make a showing which he cannot do and which he's acknowledged he cannot do. That's simply the way the rule is written. Make your objection, because plea agreements and even without agreements, guilty pleas need to have a degree of finality, and you need to go in and advise them, which you did. That's why I'm questioning the government's actions in this thing. It should have been final, or they should have said we screwed up, but we stick by it and say no more. Well, that's essentially what they did. No, he said I want as much. This guy's dangerous. I want as much punishment as possible. That's different from saying I screwed up when it's sitting down, you know. Well, to the extent that the plea agreement did not rebind the government to make some kind of affirmative recommendation, I honestly, and again, it wasn't my plea agreement. I didn't have anything to do with it. I understand. I don't think that that's an objection or a requirement on the government at that point in time. Okay. Any further questions? No, thank you. We've got a minute and a half. A couple of quick comments. First of all, the assertion that the judge only needs to advise the defendant and the defendant does not need to respond and acknowledge he understood the advisement, there's no colloquy like that that exists in a plea agreement. It must be something that the defendant is told. Do you understand? Yes, I do. And they go into the next step. This is a modification of that plea agreement. That phase of the plea agreement needs to be advised. And there must be a response by the defendant. Otherwise, we don't know whether he understood or not. Well, in an abstract sense, that's true. But the entire reason behind the rejection of this plea agreement was that the sentence was too low. That was the whole tenor of the conversation. So it seems impossible to me, looking at this, that the defendant would not have understood that the reason why the plea was out was that the sentence was going to be more than had been agreed to. That is part of the thing that bothered me, too, because when I look at this record it doesn't tell us, first of all, I've got a defendant here with a criminal history one. That means he has no significant record. Maybe he's got one misdemeanor at the most. And he's somebody who's going to, he's so dangerous, he's going to end up spending his life in prison. Where does this analysis come from, from the government, to ask for this maximum sentence? There's, I mean, the government made a mistake. Maybe. That's what they said in the record. But what if they negotiated in good faith and said to themselves, you know, this really isn't, this guy was drunk, he was intoxicated, he really didn't have any real intent to harm this particular officer. The only thing in the record I saw was that they found this knife on the ground. There's no evidence that he even put the knife in the direction of the officer that's involved here. We don't have any input like that that says this is what happened. All we know is that after the fact, a knife was found in the ground, and then we are going to give them all these enhancements, including, I believe this is a specific intent crime, isn't it? Doesn't he have the specific intent to harm a government official in order for him to get this sixth-level bump? I mean, that's what it has to be. So when I see this and I see that they're putting out here that there's, the government acknowledges that they miscalculated the plea agreement, well, maybe they did it intentionally because they thought the harm wasn't so great. Maybe the strength of the case wasn't very good because of the. . . Well, all we know is he miscalculated, and I think we have to. . . And that's it, so. . . Our questions have taken you over your time, so thank you both for your arguments. Thank you. The case, just argue to be submitted for decision.
judges: Schroeder, Thomas, Graber